Paul MOONEY *v.* Wanda MOONEY

78-285                                   578 S.W. 2d 195

Opinion delivered March 5, 1979
(Division II)
[Rehearing denied April 9, 1979.]

*Ted Boswell, P.A.,* for appellant.

*W. J. Walker,* for appellee.

DARRELL HICKMAN, Justice. Wanda Mooney, the appellee, sued her husband, Paul Mooney, for divorce in the Pulaski County Chancery Court. He counterclaimed, also seeking a divorce. She amended her complaint requesting only separate maintenance; at trial, she dismissed all of her complaints. The case went to trial on the appellant's counterclaim for divorce.

The main allegation for grounds by the appellant was that the appellee had, by fraud, deceit and breach of trust, converted certain of the appellant's property, in which she had only a dower interest, to her own use. The chancellor found that the appellant had failed to prove his case and on appeal we cannot say the finding of the chancellor was clearly against the preponderance of the evidence. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W. 2d 290 (1978).

These parties were married in December of 1972. Both had been previously married and divorced. The appellant, who was 64 at the time they were married, had been a successful businessman and at the time of the marriage claimed that he had a net worth of over half a million dollars. The appellee testified that she had a good paying job with the state and brought some $86,000.00 in cash into the marriage.

The parties had a stormy marriage. She testified that he drank to excess and beat her about every six or seven weeks. She said that on three separate occasions he kicked or knocked the door down in her home. He testified that they both drank to excess at times and admitted that he had kicked a door down once. He denied that he beat her and, in fact, said at one time she took a board to him. She admitted that once she did strike him with a board.

Although the appellant offered some testimony regarding these personal indignities, it was the circumstances of two of their financial transactions that the appellant relies upon as the basis for his suit for divorce.

After they had been married he went back into the business in which he had been successful, the manufacture of veneer. He said he went into business so that Mrs. Mooney's son would have something to do. She said that she tried to dissuade him from going back into business. Paul Mooney was a director of the Union Bank of Benton and one of its largest stockholders. The first transaction occurred in July 1973; they commingled some of their funds and purchased a $160,000.00 certificate of deposit through the Union Bank of Benton which was placed in Mrs. Mooney's name only. Mrs. Mooney testified that on the day that the money was com-

mingled so that this certificate of deposit could be purchased, she delivered to Paul Mooney her liquid assets which consisted of some $77,000.00 in cash and checks. As far as she knew the money was used to buy the certificate. Paul Mooney offered testimony that her contribution was less than $30,-000.00 and called two witnesses, both bank officers, to verify his side of the story. The deal was complex as were all of their financial dealings.

The second transaction, the one most heavily relied upon by Mr. Mooney, was an assignment of most of Paul Mooney's Union Bank of Benton stock in August, 1974, to Mrs. Mooney. The assignment was executed before the president of the bank. However, the stock was not transferred until April, 1976, at the request of Mrs. Mooney.

Paul Mooney did not dispute that he signed the assignment nor did he object to the certificate of deposit being placed in Mrs. Mooney's name. In fact, the president of the bank at the time, who was a friend of Paul Mooney's and a business associate, testified that he tried to talk to Mr. Mooney about both transactions and was rebuffed on both occasions by Mr. Mooney who simply said that he and his wife had an "agreement." It was at the trial that Mr. Mooney offered testimony that his wife had asked him several times to transfer the stock to her name and her subsequent actions amounted to fraud.

The parties have considerable other assets, one of which is a residence located in Pleasant Valley, an expensive subdivision in Little Rock, which is held by the entirety. Mrs. Mooney resides there and apparently makes the house payments. Since she had dismissed her complaint for relief, she was awarded no money as support. She still has the stock in the bank and remaining proceeds from the $160,000.00 certificate of deposit. She gave or loaned some of the proceeds to her son to start a business.

The major point of contention and argument of the appellant is that a handwritten note on the assignment to the effect that the assignment was in consideration of a $50,-000.00 loan from Mrs. Mooney to Mr. Mooney was not on

the assignment when it was made. Mrs. Mooney denied that. Also, there was a dispute regarding the source of the money that went to make up the $160,000.00 certificate of deposit. Mr. Mooney called two witnesses, the bank president at the time of the transactions and the bank president at the time of the trial, who testified in detail regarding the bank records and corroborated Mr. Mooney's testimony that Mrs. Mooney did not provide $77,000.00 as she claimed. Also, a witness was called to testify that Mrs. Mooney had spent about $8,000.00 on furnishings through a furniture store, contrary to her contention that the expenditure was more like $2,500.00. All of these, of course, go to the credibility of Mrs. Mooney.

Mr. Mooney claimed in his complaint that the parties were separated in February of 1975. However, he admitted in his testimony that he spent the night at their home in July, 1976, and that was the last time they had stayed together as husband and wife. He said that night he slept on the couch. She alleged that they were separated in December, 1976. She filed the complaint for divorce in January, 1977. It was before either claimed to have been the last date they lived together, that is, July, 1976, or December, 1976, when Mrs. Mooney called the bank and asked that the shares be transferred to her name. The stock was reissued in her name.

What the appellant's argument amounts to is that, while he does not deny that all of these transactions took place with his full knowledge and consent, the transfers were made to protect his assets from his creditors or for other purposes and her subsequent dealings were conversion and breach of trust; he ought to have it back. Appellant acknowledges "that no testimony . . . of a scheme to defraud" was presented, and such intent must be found in circumstantial evidence.

However, the issue, and the only issue to us on appeal, is whether the chancellor was wrong in not granting the appellant a divorce. The grounds for divorce, as alleged, were fraud, deceit and breach of trust in handling his assets which rendered his life intolerable. The parties testified differently and we cannot say, on the basis of the record alone, that Mrs. Mooney clearly intended at the time to fraudulently convert

the property to her own use. It was in her name with the consent of the appellant and at the time the transfers were made there is no evidence she was guilty of fraud in inducing Mr. Mooney to cause the transfers to be made. Husbands and wives often transfer their property to each other and later have a falling out. The fact that one of them keeps that property is not alone grounds for divorce.

The appellant asked the trial court to grant him a divorce and divide the property according to law. On appeal, the appellant asks us to do the same. The property, of course, cannot be divided unless a divorce is granted. Our review is limited to the sole issue of whether the chancellor's finding in dismissing the complaint was clearly erroneous. Since there is no other issue raised on appeal, we simply answer the argument by saying we cannot say the chancellor's decree was against the preponderance of the evidence.

The decree rendered by the chancellor is affirmed and the appellee is denied any attorney's fee on appeal.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.