W.D. MOORE and Evelyn MOORE *v.* Hattie MOORE, Individually and as Executrix of the ESTATE of Doyle MOORE, Deceased, et al.

CA 86-311 731 S.W.2d 215

Court of Appeals of Arkansas
Division II
Opinion delivered June 10, 1987
[Rehearing denied July 8, 1987.*]

* Corbin, C.J., not participating.

*Friday, Eldredge & Clark*, by: *Michael G. Thompson, James Edward Harris*, and *J. Lee Brown*; and *Roy Finch*, for appellant W.D. Moore.

*Cliff Jackson, P.A.*, for appellant-intervenor Evelyn Moore.

*Hilburn, Bethune, Calhoon, Harper & Pruniski, Ltd.*, by: *Sam Hilburn* and *Paula Jamell Storeygard*.

JAMES R. COOPER, Judge. The appellant, W.D. Moore, filed suit against the executrix of his deceased brother's estate, the appellee Hattie Moore, alleging that he was entitled to one-half of the stock of a corporation, Arkansas Parts Warehouse, Inc. W.D. Moore based his complaint on a 1952 contract executed by the brothers which provided that W.D. Moore was to be the beneficial owner of one-half of the outstanding stock of the corporation, and that Doyle Moore was to hold the title in his name. W.D. Moore alleged that his brother was the trustee for his one-half of the stock, and asked the court to find that there was an implied, resulting, or constructive trust.

The other appellant, intervenor Evelyn Moore, is the estranged wife of the appellant, W.D. Moore. In her complaint filed August 5, 1985, she alleged that she was a third party beneficiary to the 1952 contract, and that both brothers had committed fraud against her by lying during depositions taken during pending divorce proceedings and attempting to hide the true ownership of the corporation's stock and other property.

The appellee answered, denying the allegations and pleading the affirmative defenses of the statute of non-claim, statute of limitations, estoppel, and laches. A hearing was held on January 21, 1986, and by agreement of the parties, the chancellor first heard the arguments of counsel on the affirmative defenses. Ruling from the bench, the chancellor dismissed Evelyn Moore's claims. A decree, dated April 22, 1986, was entered *nunc pro tunc*

dismissing the claims of both appellants. However, before the entry of the written order, the appellants attempted to amend their complaint. In the amended complaint, W.D. Moore alleged that he was also entitled to one-half ownership of two parcels of real estate, and he added the other appellees as necessary parties, alleging that they had been wrongfully issued stock. The chancellor also dismissed the amended complaint on the grounds of res judicata, collateral estoppel, statute of non-claim, statute of limitations, unclean hands and equitable estoppel.

In this appeal, the appellants argue that the chancellor erred in dismissing their complaints on the grounds of non-claim and statute of limitations, and that the chancellor erred in dismissing their amended complaints. The appellant, Evelyn Moore, also argues that the trial court erred in dismissing her complaint in intervention based upon the fact that she was not a third party beneficiary to the contract, and that he erred in dismissing her fraud claim without taking any evidence. We find the trial court was correct in dismissing the claims of the intervenor, but erred in dismissing the claims of W.D. Moore.

For the sake of clarity, we will first address Evelyn Moore's arguments, then the arguments of W.D. Moore concerning the dismissal of the complaint, and then the amended complaint. Only facts necessary to an understanding of the issues involved will be recited.

## THE TRIAL COURT DID NOT ERR IN DISMISSING THE COMPLAINTS OF THE APPELLANT/ INTERVENOR, EVELYN MOORE.

The chancellor first found that the intervenor, Evelyn Moore, had no interest in the stock in her own right, and we agree. Any rights she may have had in the stock, or in the real property, would vest through her relationship with her husband, W.D. Moore. At the time of the hearing they had been separated since 1974, and, even though a divorce was pending, they had not been divorced. Arkansas Statutes Annotated § 34-1214(a) (Supp. 1985) states that marital property shall be distributed at the time the divorce decree is entered. A chancellor has no authority to dispose of property rights in an award of separate maintenance. *Coleman v. Coleman*, 7 Ark. App. 280, 648 S.W.2d 75 (1983). Therefore, even if the chancellor had heard the merits of the case

and decided in favor of W.D. Moore, he would have had no authority to issue the intervenor her share.

■ The appellant's argument that she is a third party beneficiary to the contract between the two brothers is also without merit. There is a presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third party unless it clearly appears that this was the intention of the parties. *Brown v. Summerlin Associates, Inc.*, 272 Ark. 298, 614 S.W.2d 227 (1981). Nowhere does the intervenor's name appear in the 1952, or later, contracts. At the time the contract was executed, the brothers believed that it was a violation of the Fair Trade Laws to operate their auto parts business at both the wholesale and retail levels. Therefore, they dissolved their partnership and issued all of the stock in the new corporation to the now-deceased brother. The contract stated that W.D. Moore had beneficial ownership in one-half of the stock of the corporation. The only other written contract executed by the brothers is one which provided for the continuity of the business in the case of death or disability of one of the brothers. However, that contract was later rescinded by a written agreement signed by both brothers and their wives.

■ The appellant's arguments regarding fraud are also meritless. It is true that, in some circumstances, the wife may be able to sue her husband for tortious fraud. *See Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986); *Leach* v. *Leach*, 227 Ark. 599, 300 S.W.2d 15 (1957). However, the intervenor admitted that she suspected in 1974 that her husband and his brother had lied and were attempting to defraud her. Therefore, the trial court was correct in dismissing any fraud claim the intervenor may have had on the grounds of the statute of limitations. Ark. Stat. Ann. § 37-206 (Repl. 1962).

## THE TRIAL COURT ERRED IN DISMISSING W.D. MOORE'S CLAIM TO THE STOCK ON THE BASIS OF THE STATUTE OF NON-CLAIM.

The trial court found that W.D. Moore's claim to the stock was based on breach of trust and that it was barred by the statute of non-claim, which, at the time of Doyle Moore's death, provided that contract actions against a decedent's estate were to be filed or verified to the personal representative within six months after the

date of the first publication of notice to creditors or be forever barred. Ark. Stat. Ann. § 62-2601(a) (Repl. 1971). The brother, Doyle Moore, died on September 1, 1982, and notice to creditors was first published on September 17, 1982. W.D. Moore's complaint was not filed until 1985. However, we find that W.D. Moore's complaint was timely filed because his cause of action was based on breach of title.

■ The statute of non-claim does not refer to claims of title or for the recovery of property, as claims of such character are not claims against the estate of the deceased. *Morton* v. *Yell*, 239 Ark. 195, 388 S.W.2d 88 (1965); *Fred* v. *Asbury*, 105 Ark. 494, 152 S.W. 155 (1912). This rule clearly applies to the recovery of real estate. The appellees argue that the rule applies only to real estate. We disagree.

■ The purpose of the statute of non-claim is to facilitate payment of claims against an estate within a particular time period, and not to defeat a just claim on a technicality that might entrap the claimant. *Parham* v. *Pelegrin*, 468 F. 2d 719 (8th Cir. 1972). This purpose is not advanced by limiting the exception to claims for real estate, especially when, as in the case at bar, the claimant is not seeking recovery of a debt, but is asking the representative of the decedent's estate to return to him property that belongs to him. As stated in C.J.S.:

> [P]resentation is ordinarily required of all claims against [the] decedent, the term "claims" comprehending such debts or demands as might have been enforced against the decedent by personal actions for the recovery of money; but claims of title or for the possession or recovery of specific property need not be presented.

34 C.J.S. *Executors and Administrators* § 398 (1942). In the present case, W.D. Moore alleges that identifiable personal property in the hands of the administrator of Doyle Moore's estate belongs to him; he is not claiming that the stock is owed to him as a debt or claiming money for the value of the stock. Therefore, we hold that the chancellor erred in dismissing the complaint as it pertained to the stock.

## THE TRIAL COURT ERRED IN DISMISSING W.D. MOORE'S CLAIM TO CERTAIN REAL ESTATE BASED ON THE STATUTE OF LIMITATIONS.

Although the issues concerning the real estate were not raised by W.D. Moore in his first complaint, the chancellor allowed the attorneys to argue the affirmative defenses pled by the appellees as they applied to the real estate. One tract in question, located in Little Rock, is a parcel of land on which the business is now situated, purchased by Doyle and Hattie Moore. The other parcel of land is located in Fayetteville, Arkansas.

W.D. Moore again bases his claim on the 1952 contract. That contract provided that both of the brothers would own one-half of any commercial enterprise either is engaged in, and the only exclusions were the respective homes and personal property of the parties, or any real estate purchased by them for specula-tion out of individual funds.

The trial court found that, if a trust relationship existed, the appellant, W.D. Moore, was put on constructive notice that the trust was being repudiated when Doyle Moore conveyed the Little Rock property to the Doyle Moore Investment Trust on December 31, 1976, and thus his claim was barred by the statute of limitations. We disagree.

In order to set the statute of limitations in motion in favor of the trustee, the trust must terminate as by its own limitation or by settlement of the parties, or there must be a repudiation of the trust by the trustee and an assertion of an adverse claim by him, and the fact made known to the beneficiary of the trust. *McPherson v. McPherson*, 258 Ark. 257, 523 S.W.2d 623 (1975). When the statute of limitations has been pled, the party relying on it has the burden of proving those facts giving rise to it. *Beeson v. Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984).

The appellees argue on appeal that the trust was repudiated in 1976 when Doyle Moore conveyed the land to the Doyle Moore Investment Trust. We cannot find any evidence in the record that W.D. Moore had knowledge of this conveyance. We do not agree that the mere recordation of the deeds put W.D. Moore on constructive notice. In *Beeson, supra*, the recordation of the deeds was held to be a repudiation because the deeds conveying the land

to the trustee were executed with the understanding that they were not to be recorded during the lifetime of the beneficiary. Also cited by the appellees is the case of *Waller* v. *Waller*, 15 Ark. App. 336, 693 S.W.2d 61 (1985). In that case the appellee, who was the ex-wife of the appellant, used her funds to purchase a home, but took title as husband and wife. Later, the appellant refused to convey the property to the appellee when she so requested, but he still recognized her as the sole owner. We held there that the appellee relied on the appellant's actions recognizing her as the lawful owner, and held that the statute of limitations did not run.

In the case at bar, W.D. Moore had no knowledge of any repudiation until Hattie Moore fired him and evicted him from the premises in December 1984. From the time the property was purchased in the names of Hattie and Doyle Moore, through the time the property was conveyed, and continuing up until the point in time that Hattie Moore dismissed him, W.D. Moore worked at the company in the same capacity he always had; he drove a company car, used company credit cards and was paid by the company in the same manner as in the years before his brother's death. We hold that the evidence will not support a finding that the trust was repudiated in 1976. The document giving rise to a possible trust relationship does not forbid conveying the land, there is no evidence that W.D. Moore had any knowledge that the land had been conveyed nor is there any evidence that the appellees made any changes in company management sufficient to put W.D. Moore on notice that a trust relationship had been repudiated.

We do not mean to suggest that a trust did in fact exist. That is a matter for the trial court to decide after hearing all the evidence. We only hold that if a trust relationship did exist, it was not repudiated until December 1984, and thus, the statute of limitations did not begin to run until then.

## THE TRIAL COURT ERRED IN DISMISSING THE AMENDED AND SUBSTITUTED COMPLAINT OF W.D. MOORE.

W.D. Moore filed an amended complaint on April 14, 1986, adding the other appellees as co-defendants and alleging that a fiduciary relationship existed between Doyle and W.D. Moore.

The amended complaint also included the claims regarding the real property. The chancellor dismissed the complaint, stating that the appellants were attempting to add new causes of action and new parties. He also found that the amended complaint was barred by res judicata, statute of limitations, laches, equitable estoppel, and the doctrine of unclean hands.

■ It was error for the trial court to dismiss the amended complaint based on res judicata because the amended complaint was filed before the trial court issued its order. The appellees argue that res judicata does apply because the trial court entered its order *nunc pro tunc* and that the order relates back to the date of trial. We disagree.

■ A *nunc pro tunc* order may be entered to make the court's record speak the truth or to show that which actually occurred. *Southern Farm Bureau Casualty Insurance Co.* v. *Robinson*, 238 Ark. 159, 379 S.W.2d 8 (1964). However, it may not be used to accomplish something which ought to have been done but was not done. *Fitzjarrald* v. *Fitzjarrald*, 233 Ark. 328, 344 S.W.2d 584 (1961); *Dickey* v. *Clark*, 192 Ark. 67, 90 S.W.2d 236 (1936). Courts are not permitted to enter a *nunc pro tunc* order simply because such order should have been entered at that time; rather *nunc pro tunc* orders are only properly issued where such orders were properly made, but through clerical misprision were not entered. *Canal Insurance Co.* v. *Arney*, 258 Ark. 893, 539 S.W.2d 178 (1975). A judgment or decree is effective only when it is entered by filing with the clerk as provided by ARCP Rules 58 and 79. *Koelzer* v. *Bagley*, 13 Ark. App. 48, 680 S.W.2d 111 (1984). Thus, res judicata could not apply to the amended complaint because it was filed prior to the date the judgment was entered and became effective.

■ The discussion of the dismissal on the grounds of the statute of non-claim and statute of limitations also applies to the dismissal of the amended complaint on the grounds of the statute of limitations and statute of non-claim. Basing the dismissal on laches was also error. We have found that W.D. Moore's cause of action arose in December 1984, when Hattie Moore dismissed him. W.D. Moore filed his complaint a few months later on February 19, 1985. Laches refers to the inequity caused by unreasonable delay where the party claiming the

defense of laches has changed his position to his detriment. *Beeson* v. *Beeson, supra.* We can find no unreasonable delay on the part of W.D. Moore nor can we find any facts which would support a conclusion that the appellees relied to their detriment on an unreasonable delay.

The chancellor also stated in the order dismissing the amended complaint that the appellant was attempting to add new causes actions and new parties. However, we fail to see how the amended complaint addresses any new causes of action. While W.D. Moore made no claim regarding the real estate in his original complaint, the trial court did allow the appellant to present his cause of action at the pre-trial hearing and allowed the attorneys for all parties to argue the merits of the affirmative defenses as they applied to the real estate. Thus, the allegations regarding the real estate cannot be called new causes of action. The additional parties were beneficiaries of Doyle Moore's will and were necessary parties to the action. *See* ARCP Rule 19(a). Therefore, it was error for the chancellor to dismiss the amended complaint on the ground that W.D. Moore was attempting to add new parties and causes of action.

It was also error for the trial court to dismiss the amended complaint on the grounds of unclean hands. The chancellor apparently mentioned this doctrine because W.D. Moore, in an attempt to prevent his estranged wife from receiving her marital share of the company, stated in a deposition that he did not own any stock, and that his brother, Doyle Moore, owned it all. However, the appellees in this case were not the victims of the alleged attempted fraud and it is clear that Doyle Moore was an active participant in the scheme. One guilty of fraud may not invoke the unclean hands doctrine. *Anthony* v. *First National Bank of Magnolia*, 244 Ark. 1015, 431 S.W.2d 267 (1968). If the unclean hands doctrine is used to defeat a suit, it must have an immediate and necessary relation to the equity which the complainant seeks to enforce against the defendant, and the party complaining of the wrong must have been injured thereby to justify the application of the principle of unclean hands. *McCune* v. *Brown*, 8 Ark. App. 51, 648 S.W.2d 811 (1983). The purpose of the doctrine is to secure justice and equity and not to aid one in an effort to acquire property to which he has no right. *McCune, supra.* Since Doyle Moore was, according to the testimony, an

active participant in the conduct sought to be used to bar W.D. Moore's claim, equity should not use the doctrine to aid Doyle Moore's estate.

The final issue is whether the amended complaint is barred by equitable estoppel. We hold that the trial court erred in finding that it is. Again the trial court based its finding on the statements W.D. Moore made in the depositions taken in contemplation of his divorce.

To successfully assert the defense of equitable estoppel four elements must be shown:

1) the party to be estopped must know the facts; and,

2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; and,

3) the party asserting estoppel must be ignorant of the facts; and,

4) the party asserting estoppel must rely on the other's conduct to his detriment.

*Linda Elena Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 688 S.W.2d 316 (1985); *Wells* v. *Everett*, 5 Ark. App. 303, 635 S.W.2d 294 (1982).

The evidence in this case simply will not support affirmative findings on all of these elements. There is no evidence that W.D. Moore intended his brother and his family to believe that he had no interest in the stock and property, and W.D. Moore's conduct indicates the opposite. He continued to work for the company, had a company credit card, and drove a company car. We cannot find any evidence in the record that indicates that Hattie Moore and the other appellees were ignorant of the true facts. There has been no showing that any of the appellees relied to their detriment on W.D. Moore's conduct or statements.

In summary, we affirm the dismissal of the complaint of the

appellant/intervenor, but we reverse the trial court's dismissal of the complaint and amended and supplemental complaint of the appellant W.D. Moore, and we remand the case to the trial court for further proceedings consistent with this opinion.

Affirmed in part.

Reversed and remanded in part.

COULSON and MAYFIELD, JJ., agree.