Margaret B. GRIDER *v.* Grady Pat GRIDER

CA 97-803                                         968 S.W.2d 653

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 13, 1998

*The Harper Law Office*, by: *Kenneth A. Harper*, for appellant.

*Hilliard Law Office*, by: *Zenola M. Hilliard*, for appellee.

D. FRANKLIN AREY, III, Judge. The Cleveland County Chancery Court granted appellant Margaret B. Grider a decree of separate maintenance on her counterclaim against the appellee, Grady Pat Grider. However, the chancellor declined appellant's request that he enforce the separation and property settlement agreement previously entered into by the parties. On appeal, appellant contends the chancellor erred in failing to enforce this agreement. We agree that the chancellor had the power to enforce the agreement, so we reverse and remand this matter for further proceedings consistent with this opinion.

Appellant and appellee entered into a "Separation and Property Settlement Agreement" in February of 1996. The agreement noted the parties' intent to live separate and apart for the rest of their lives, and purported to determine their rights and obligations during their separation. It divided the parties' personal property and allowed appellant the use of the marital home. It specifically stated that it constituted an independent contract of the parties that would constitute a stipulation between them in any divorce action.

Appellee filed for divorce two months after the parties entered into the agreement. Appellant filed a counterclaim for separate maintenance. At trial, appellee failed to provide corroboration of the alleged grounds for divorce, so the chancellor granted a directed verdict against him. Since appellant proved her case, the chancellor entered a separate maintenance decree on her counterclaim.

Despite appellant's request, the chancellor did not enforce the parties' agreement. He believed that a decision on the agreement's enforceability would be premature and inappropriate

because no decree of divorce had yet been awarded in the proceeding.

We are asked to determine whether the chancellor has the power to enforce an agreement that divides the parties' marital property in the course of a proceeding that results in a decree of separate maintenance. Appellee contends that the chancellor lacked jurisdiction to absolutely divide the parties' property in the decree of separate maintenance. In her own words, appellant responds that she "is appealing the trial court's decision that it lacked the power to enforce the [a]greement between the parties, not its failure to proactively divide the property in its legal separation order."

■ The chancellor did have the power to enforce the parties' agreement, even though no decree of divorce was entered. "Courts of equity may enforce the performance of written agreements between husband and wife made and entered into in contemplation of either separation or divorce . . . ." Ark. Code Ann. § 9-12-313 (Repl. 1993). The agreement at issue indicates that it was "entered into in contemplation of . . . separation"; it determined the rights and obligations of the parties as to their marital property during their separation. Thus, section 9-12-313 provides the chancellor with the power to enforce the agreement.[1]

This conclusion is supported by *Strasner v. Strasner*, 232 Ark. 478, 338 S.W.2d 679 (1960). In that case, no action for divorce was instituted by either party prior to our supreme court's decision. At issue was an agreement between the husband and wife that divided their marital property, among other things. The wife brought an action in chancery court seeking specific performance of the agreement. The chancellor found that the agreement was valid, decreed specific performance of the property settlement agreement, and awarded the wife judgment for delinquent pay-

---

[1] The dissent highlights the following language in section 9-12-313: ". . . as are in conformity with rules and practices of courts of equity." This language is cited as support for the dissent's argument that a court of equity has no power to act in cases such as the one before us. We think the highlighted language modifies the "lawful ways and means" a court of equity may employ to enforce the agreement. It does not modify its power to act in the first instance. *See* § 9-12-313.

ments. *Id.* at 480, 338 S.W.2d at 680. On appeal, the husband argued that the chancellor lacked subject matter jurisdiction to enforce the agreement because the wife had an adequate remedy at law for breach of contract. Our supreme court affirmed the chancellor's jurisdiction, noting "that the Legislature settled the matter of jurisdiction by the passage of Act 290 of 1941 . . . ." *Id.* at 481, 338 S.W.2d at 681. Act 290 of 1941 is now codified as section 9-12-313.

Similarly, the enforcement of a separation and property settlement agreement was at issue in *Rucks v. Taylor,* 282 Ark. 200, 667 S.W.2d 365 (1984). The husband died after the parties entered into an agreement, but before a divorce decree was granted. The supreme court found that the language of the agreement at issue demonstrated an intent to terminate all property rights between the parties with the signing of the agreement.

> While the agreement was to be incorporated into a divorce decree, if any, it was not contingent upon their obtaining a divorce. The chancellor has jurisdiction over such agreements even in the absence of a divorce action.

*Rucks,* 282 Ark. at 202, 667 S.W.2d at 366. The deceased husband's widow sought to take a piece of property by virtue of her survivorship of an estate by the entirety with the deceased husband; our supreme court affirmed the chancellor's enforcement of a provision of the agreement requiring a sale of the property and equal division of the proceeds. *Id.*

■ This line of cases supports the proposition that the chancellor had the power to enforce the parties' agreement even though no divorce decree was entered. Therefore, entry of a decree of separate maintenance did not foreclose the chancellor's exercise of jurisdiction to enforce the agreement.

■ The chancellor relied upon another line of cases for the proposition that marital property can only be distributed at the time a divorce decree is entered. *See Kesterson v. Kesterson,* 21 Ark. App. 287, 731 S.W.2d 786 (1987); *Moore v. Moore,* 21 Ark. App. 165, 731 S.W.2d 215 (1987); *Coleman v. Coleman,* 7 Ark. App. 280, 648 S.W.2d 75 (1983). The cases cited by the chancellor articulate the following rule:

> We have been unable to find any case holding that property rights are to be adjudicated upon the rendition of a decree of separate maintenance. We held in the recent case of *Mooney v. Mooney*, 265 Ark. 253, 578 S.W.2d 195 (1979), that the property belonging to the parties could not be divided unless a divorce was granted.

*Spencer v. Spencer*, 275 Ark. 112, 114, 627 S.W.2d 550, 551 (1982). Similarly, we have read Arkansas Code Annotated section 9-12-315(a) (Repl. 1993) to mean "that marital property shall be distributed at the time the divorce decree is entered. A chancellor has no authority to dispose of property rights in an award of separate maintenance." *Moore*, 21 Ark. App. at 169, 731 S.W.2d at 218.

██ ██ These cases are distinguishable and do not prevent the chancellor's exercise of power in this instance. They indicate that the *chancellor* cannot adjudicate marital property upon an award of separate maintenance. However, they do not prevent the chancellor from enforcing the *parties' agreement*. *Compare* Ark. Code Ann. § 9-12-313 *and Strasner, supra, with Moore, supra.* Our holding in this case does not authorize the chancellor to adjudicate property rights; rather, pursuant to the statute, the chancellor is authorized to enforce the parties' agreement "made and entered into in contemplation of . . . separation . . . ." *See* Ark. Code Ann. § 9-12-313.

Reversed and remanded for further proceedings consistent with this opinion.

ROBBINS, C.J., and BIRD, Neal, and MEADS, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I disagree with the refusal to follow our long line of cases holding that a chancellor lacks the power to divide marital property absent a divorce decree. In *Mooney v. Mooney*, 265 Ark. 253, 578 S.W.2d 195 (1979), our supreme court affirmed a chancellor's refusal to divide marital property where the appellant's counterclaim for divorce was dismissed for failure to prove grounds, and stated:

> The appellant asked the trial court to grant him a divorce and divide the property according to law. On appeal, the appellant asks us to do the same. The property, of course, cannot be divided unless a divorce is granted.

*Id.* at 256–57, 578 S.W.2d at 197.

Likewise, in *Spencer v. Spencer*, 275 Ark. 112, 627 S.W.2d 550 (1982), the supreme court followed its decision in *Mooney* in a divorce case where the appellant amended her original divorce action to ask for separate maintenance. The chancery court rejected the appellee's complaint for divorce, and granted a decree on appellant's amended complaint for separate maintenance. The chancellor then divided the marital property, acting under Arkansas Statute Annotated § 34-1214 (Supp. 1979). The supreme court reversed and remanded the case with directions that the chancellor enter an appropriate order, stating:

> Prior to Act 705 of 1979, Ark. Stat. Ann. § 34-1214 provided: "In every final judgment for divorce from the bonds of matrimony . . ." the property rights were to be disposed of by the court. The present act as amended states: "At the time a divorce decree is entered . . ." the property shall be divided in accordance with the formula set forth therein. We have been unable to find any case holding that property rights are to be adjudicated upon the rendition of a decree of separate maintenance. (Emphasis added.)

*Spencer, supra*, 275 Ark. at 114, 627 S.W.2d at 551.

This court has followed the *Mooney* and *Spencer* holdings. In *Coleman v. Coleman*, 7 Ark. App. 280, 648 S.W.2d 75 (1983), we reversed a chancellor's action in distributing a certificate of deposit to the appellee who was awarded a decree of separate maintenance, and termed the order awarding the CD "an improper final award of property." In *Moore v. Moore*, 21 Ark. App. 165, 731 S.W.2d 215 (1987), we held that a chancellor had no authority to divide stock owned by a husband to his estranged wife, even though the couple was separated and a divorce action was pending, because they had not been divorced. In *Kesterson v. Kesterson*, 21 Ark. App. 287, 731 S.W.2d 786 (1987), we stated: "The appellant correctly argues that the chancellor cannot enter an order

absolutely dividing the marital property in an order granting legal separation." *Id.* at 291-92, 731 S.W.2d at 789.

The majority dismisses this line of cases from our supreme court and our court by drawing a distinction between instances where a chancellor adjudicates marital property upon an award of separate maintenance and those cases where a chancellor enforces an agreement by the parties to divide their property. Perhaps this distinction would matter if the law held that parties may contract to vest jurisdiction in a court to engage in action that is otherwise beyond its powers. But no such rule has been cited by the majority for good reason—it has never existed.

There is an obvious difference between having the power to enforce an agreement that is within the power of the court to adjudicate and having the power to engage in an *ultra vires* act. Chancellors may enforce legally enforceable agreements because they *can* enforce them. They can enforce them because they have the authority to enforce them. They have the authority to enforce them because the subject matter of the agreements falls within the scope of the powers vested upon chancellors by the people of Arkansas, from whom judicial power is obtained to do anything. But the people of Arkansas have never delegated to individual litigants the authority to vest chancellors with power to distribute marital property absent a divorce decree. If that was the case, then chancellors would be empowered to do whatever litigants agreed, even if the agreements contravene public policy.

The majority arrives at its remarkable conclusion by reading Arkansas Code Annotated § 9-12-313, as if the words of its final clause do not exist. That statute reads as follows:

> Courts of equity may enforce the performance of written agreements between husband and wife made and entered into in contemplation of either separation or divorce and decrees or orders for alimony and maintenance by sequestration of the property of either party, or that of his or her sureties, or by such other lawful ways and means, including equitable garnishments or contempt proceedings, *as are in conformity with rules and practices of courts of equity.*

As previously indicated, Arkansas has never recognized a power in courts of equity to divide marital property except upon a decree of divorce. In fact, Arkansas Code Annotated § 9-12-315(a)(1)(A) (Repl. 1993) provides that all marital property shall be distributed "at the time a *divorce decree* is entered." (Emphasis added.) If parties to divorce actions could vest chancellors to distribute marital property absent a divorce decree, then the language of § 9-2-315 makes no sense, and the final clause of § 9-12-313 that speaks of conformity with rules and practices of courts of equity is useless verbiage.

It is also worth noting that the appellee in this case did not agree to a division of the marital property in any event other than a divorce decree. The pertinent language of the separation and property settlement agreement that the parties signed reads:

> It is clearly understood that this Agreement constitutes the independent contract of the parties, merger and incorporation by reference into any *divorce decree* notwithstanding, and the same may not be modified, altered, or changed, except by the mutual written consent of the parties. The sole purpose of this Separation and Property Settlement Agreement with the decree is to confer jurisdiction upon the Chancery Court of Jefferson County (sic), Arkansas, for the purpose of enforceability through contempt proceedings.
>
> This agreement shall constitute a stipulation between the parties *in any divorce action. This is an independent contract to be merged into a chancery decree.* (Emphasis added.)

The chancellor was absolutely correct in his letter opinion when he stated that the agreement contemplated a divorce proceeding rather than a decree of separate maintenance, and that he could not enter an order absolutely dividing property in a decree granting legal separation. Appellee did not agree to vest the chancellor with jurisdiction to divide the marital property in the event of a decree granting legal separation, and the agreement explicitly provides that it may not be "modified, altered, or changed, except by the mutual written consent of the parties." Even if the majority is right about the chancellor having the power to enforce agreements between the parties, it does not follow that a chancellor has the power to enforce a non-agreement.

Arkansas law has never held that a chancellor has the power to distribute marital property absent a divorce decree. The only issue presented to the supreme court in *Strasner v. Strasner*, 232 Ark. 478, 338 S.W.2d 679 (1960), was whether a written property settlement agreement was amenable to an action for specific performance where an alleged nonbreaching party had a complete and adequate remedy at law. The supreme court did not hold that a chancery court has the power to distribute marital property into a separate maintenance action simply because the parties entered into a written property settlement agreement.

I refuse to engage in the amazing notion whereby the plain language of an agreement that contemplates a "divorce decree" is construed to mean a decree for separate maintenance. I also will not pervert the meaning of the agreement and the plain language that prohibits it from modification, alteration, or changing "except by the written consent of the parties" by a conclusion that the agreement can be modified, altered, or changed without that consent, not to mention over the objection of a party. A court of *equity*, of all entities, has no power to compel a party to specifically perform what he never agreed to do, especially when the explicit condition relative to his performance is lacking.

Public policy shapes the rules followed by courts of equity and defines the practices and prescribes the powers of chancellors, not private contracts. Litigants may not constitute a law unto themselves for their private convenience and in the face of a settled body of case and statutory law. Before today, our court appeared to understand this reality; it now appears to have forgotten it. Perhaps the supreme court will issue a reminder if it chooses to grant a petition for review of the majority decision. Meanwhile, I dissent.