HENKELL *v.* HENKELL.

5-520                                           273 S. W. 2d 402

Opinion delivered December 13, 1954.

*L. V. Beaman* and *Vol T. Lindsey,* for appellant.

*F. O. Butt,* Eureka Springs, for appellee.

MINOR W. MILLWEE, Justice. Appellant, Henry Henkell, was separated from his wife, Betty Henkell, in April, 1952, and on July 21, 1952, secured a divorce from her in the Carroll County Chancery Court. As a part of the relief granted in that proceeding, custody of the only child of the marriage, Deborah Henkell, now 4 years old, was awarded to appellee, Mrs. Russell Urich, Betty Henkell's mother. It is uncertain from the record whether this conclusion was reached from the evidence adduced at the original hearing or from an agreement of the parties or both. In addition to awarding custody of the child to Mrs. Urich, the court also vested her with discretionary authority to permit either parent to have temporary custody of the child from time to time for purpose of visitation.

On the day after rendition of the divorce decree appellant left Eureka Springs with the child and its mother. They traveled about quite a lot in Texas, Missouri, Oklahoma and Arkansas and appellant finally took the child to the farm and home of his parents in Ottawa County, Oklahoma. In February, 1953, Mrs. Urich filed a petition for writ of habeas corpus in the District Court of Ottawa County seeking custody of the child. After a full hearing the court found that appellant wrongfully removed the child from the custody of Mrs. Urich; that there was insufficient change in conditions to warrant a modification of the Arkansas decree; and that it was for the best interest and welfare of the child that custody be restored to the child's grandmother. Appellant failed to

prosecute an appeal from this judgment and instituted the instant proceeding against Mrs. Urich and the child's mother in the Carroll Chancery Court on July 22, 1953, seeking a modification of the original divorce decree and the permanent custody of the child. Appellees duly answered and trial resulted in a decree refusing to modify the original decree as to custody and directing appellant to pay $30.00 per month for the child's support.

The basis of the petition for modification of the original decree and the principal argument for reversal of the decree on this appeal is the disputed contention that it was agreed between the parties, at the time of the original decree, that Mrs. Urich should deliver permanent custody of the child to appellant and that this agreement was performed immediately upon rendition of the decree. During the pendency of the divorce suit appellant and the child lived in the home of Mrs. Urich and her husband, the step-father of Betty, in Carroll County. On July 22, 1952, the day following the divorce, Mrs. Urich gave appellant a written statement to the effect that he might keep the child "as long as he desires" and have charge of her "until she is returned to my custody." Appellant then left with the child and his former wife for Texas where they stayed for a time and then went to Joplin, Missouri. In the latter part of August, 1952, the three returned to the Urich home at Eureka Springs. Although appellant admitted that he was fully cognizant of the terms of the original divorce decree, he testified that he had a separate agreement that Mrs. Urich would deliver exclusive custody of the child to him. This was stoutly disputed by Mrs. Urich who testified that it was understood on July 2, 1952, that he would return the child in four to six weeks and that he took the child in the latter part of August, 1952, without her knowledge and consent and thereafter failed to notify her of the child's whereabouts. After several months inquiry and search she ascertained that the child was in Oklahoma and instituted the habeas corpus proceeding in Ottawa County. Apparently there was still some hope of a reconciliation between appellant and his former

wife and she again accompanied appellant and the child to Texas where they stayed until October, 1952, when appellant took the child to the home of his parents in Oklahoma. Appellant was unemployed most of the period from April to October, 1952, while his former wife worked as a waitress during most of this time. Appellant's father died shortly before the trial in the instant case and appellant continued to live with his mother on the farm where he worked for one-half the net income of the farming operations.

Appellant pictured Mr. Urich as an habitual drunkard but this was refuted by several witnesses residing near the Urichs, including the pastor of the church to which they belonged. According to these witnesses the child was happy and well adjusted in the Urich home where it was well cared for and given religious and other training conducive to the child's proper development and happiness. Nor was there any evidence tending to show any difference in such environment and surroundings between the time of the original decree and the last trial in December, 1953. While it appears that the Henkell home in Oklahoma might have also been a suitable place for the child, it was somewhat inaccessible to school and church.

It is well settled that a decree fixing the custody of a child is final on conditions then existing and should not be changed afterwards unless on altered conditions since the decree was rendered or on material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child. *Weatherton* v. *Taylor*, 124 Ark. 579, 187 S. W. 450; *Reynolds* v. *Tassin*, 212 Ark. 1020, 208 S. W. 2d 987. While any agreement as to custody the parties may make in contemplation of divorce is of some importance as tending to show their attitude, it is not binding on the courts. *Burnett* v. *Clark*, 208 Ark. 241, 185 S. W. 2d 703. We have frequently said that the paramount and controlling consideration in cases of this nature is the welfare of the child. *Phelps* v. *Phelps*, 209 Ark. 44, 189 S. W. 2d 617. After a careful review of the record, we are unable to say the Chancel-

lor's finding that there had been neither a material change in circumstances nor a disclosure of facts unknown to the court at the time of the original decree such as would warrant a change in custody is contrary to the preponderance of the evidence.

Appellant also contends that the Chancellor erred in excluding 3 letters written by Mrs. Urich and her daughter prior to rendition of the original decree and which were in appellant's possession at the time of the first hearing. It seems that appellant, by his failure to offer these letters in evidence at the first hearing has waived his right to insist upon their relevance in the last hearing. However, even if we now consider them as part of the evidence, we are still of the opinion that a preponderance of the testimony sustains the finding that Mrs. Urich is the proper person to have custody of the child.

We cannot agree with the further contention that the court erred in directing appellant to pay $30.00 per month for the child's support. Appellant concedes that he is legally bound to support the child and it was shown that he is now more able to do so than when the original decree was entered.

In determining the difficult issue of custody, both the trial court and the district judge in Oklahoma had all the parties and their supporting witnesses before them, thereby enabling them to appraise the testimony as well as the demeanor, manner and appearance of all concerned—a privilege denied to us. On the whole case we cannot say the decree is against the weight of the evidence.

Affirmed.