Lynette Marie PRESLEY *v.* Charles Edwin PRESLEY

CA 98-954                                                    989 S.W.2d 938

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered May 19, 1999

*Sexton & Fields, P.L.L.C.*, by: *Sam Sexton, Jr.*, for appellant.

*Gean, Gean, & Gean*, by: *Roy Gean, III*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from an order denying appellant's request for a change of custody of the parties' minor children from appellee. On appeal, appellant argues that the chancellor erred in failing to find a significant change of circumstances warranting a change in custody of the parties' minor children. We disagree and affirm.

The record reveals that the parties were married on November 29, 1986. Three children were born during the marriage. On August 22, 1996, the parties divorced. Appellant was awarded

custody of the children. On April 2, 1997, appellee filed a petition for change of custody asserting a significant change in circumstances because appellant had overnight visits with a person of the opposite sex. After a hearing, which is not abstracted, appellee was awarded custody of the children. There was no appeal from that May 7, 1997, decision. Approximately two months later, appellee filed a motion to increase child support and a motion for contempt because appellant had failed to pay support. Appellant counterclaimed for a change of custody. On April 9, 1998, the chancellor denied appellant's request for a change of custody, and granted the request for an increase in support. Appellant has appealed the chancellor's ruling denying the change of custody, but does not challenge the increase in child support.

On appeal, appellant argues that the chancellor erred in finding no material change of circumstance since the last hearing. Appellant contends that in the previous order of May 7, 1997, the chancellor found that overnight unmarried guests of the opposite sex in the presence of the children was a basis for a change of custody. Thus, appellant argues that law of the case should apply as a basis for a change of custody because appellee admitted to overnight visits with a woman in the presence of the children.

■ ■ It does not appear from the abstract that appellant raised the defense of law of the case below before the chancellor. It has been held that the law-of-the-case defense cannot be raised for the first time on appeal. *State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997). Because the chancellor was not presented with an argument on this point concerning the law of the case, and made no ruling on it, the issue is barred. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). We also decline, due to lack of citation to authority or convincing argument, to address appellant's argument. *See Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997).[1]

Appellant also argues that the chancellor erred in not awarding her custody of the children because the facts in this case satisfy

---

[1] We do have serious reservations whether law of the case even applies in chancery cases involving custody determinations because the polestar consideration is the best interest of the child, and circumstances are continually changing.

the best-interest test required for a change of custody. We disagree.

In chancery cases, we review the evidence *de novo*, but we do not reverse the findings of the chancellor unless it is shown that they are clearly contrary to the preponderance of the evidence. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998); *Thigpen v. Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). In child-custody cases, we give special deference to the superior position of the chancellor to evaluate the witnesses, their testimony, and the child's best interest. *Larson v. Larson*, 50 Ark. App. 158, 902 S.W.2d 254 (1995). In custody cases, the primary consideration is the welfare and best interest of the children involved; other considerations are secondary. *Id.* A material change in circumstances affecting the best interest of the child must be shown before a court may modify an order regarding child custody, and the party seeking modification has the burden of showing such a change in circumstances. *Hepp v. Hepp*, 61 Ark. App. 240, 968 S.W.2d 62 (1998).

Here, the chancellor found:

Based upon the testimony I've heard today, there have been some changes of circumstances. Mr. Presley is now married. During the period of time since the last hearing until today, he did some things that his parents didn't approve of and that I don't approve it; that is, staying the night with his intended without benefit of clergy. That's been rectified.

Mrs. Presley has made, some very encouraging changes in her lifestyle. There's no proof that she is hanging around some of the people and engaged in some of the activities that the Court found so objectionable the last time you all were here before me. The most important thing in care of children is stability, and the children will not become yo-yo's, ping-pong balls pounding back and forth. I have not heard anything that has convinced me that there has been a sufficient change of circumstances on the 'part of either party to warrant any type of change of custody so the previous order of the court will remain in full force and effect.

. . .

And I'm going to say to Mrs. Presley that what I am doing today is in no way critical of what you have accomplished over the last

— since the last time that we were here. Because I think it has been commendable, and there was room — a vast room for improvement, and you have improved. But this isn't a situation where it's a D.H.S. case where children are removed and you do A, B, C, and D, and the children come back. I looked at the total picture to the total stability of the family and made a judgment based upon that. And it would be more detrimental, I believe, to make a change and change the children's residence once again, within a little over a year, after all of the upheaval they have been through going through a divorce to start with, which is the fault of each of you. So that is what I have done, and that is the reason I have done it.

The record indicates that it had been only two months since appellee was awarded custody of the children when appellant filed for a change of custody. The record also reveals that the children had changed homes twice in less than a two-year period. The chancellor found that the most important factor, in considering the best interest of the children, was stability so that the children would not become yo-yos between the parents. The chancellor also recognized that there had been some changed circumstances on both sides, but he did not find them sufficient to warrant a change in custody. After reviewing this record and giving great deference to the superior position of the chancellor, we cannot say that the chancellor's decision was clearly against the preponderance of the evidence. There is no case where we defer as much to the chancellor's superior ability to view the witnesses and weigh the evidence.

Affirmed.

ROBBINS, C.J., PITTMAN, STROUD, and CRABTREE, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. The parties' divorce decree awarded the appellant custody of their three small children, but restricted her from having a roommate, male or female. The appellee subsequently petitioned for a change of custody on the basis that appellant had an overnight male guest when

the children were present. The court changed custody to the appellee.

Shortly thereafter, the appellant requested that custody be returned to her. She alleged several facts supporting her contention that there had been a change of circumstances, one of which was the appellee had a female overnight guest in the presence of the children. The chancellor declined to change custody of the children, finding that the appellee had rectified his immoral behavior by marrying his female sexual partner and that it would not be in the best interest of the children to again be moved.

A chancellor is in the best position to view the parties and judge the credibility of witnesses, and his findings will not be disturbed absent an abuse of discretion. *Hepp v. Hepp*, 61 Ark. App. 240, 968 S.W.2d 62 (1998). A party who seeks a change in custody must show a significant change of circumstances since the most recent decree. *Id.* If a significant change of circumstances is found, then the chancellor must award custody based on the best interest of the child. *Id.*

Based upon the evidence presented, the chancellor abused his discretion when he ruled the appellant failed to prove a substantial change of circumstances and that it would be in the best interests of the children to remain in the custody of their father.

There were significant changes in the circumstances of the children after custody was changed to the appellee. He changed the school they attend and either decreased or stopped the extra-curricular activities in which they previously participated. Appellant left guns accessible to his small children, although he could afford to buy a gun cabinet. After a home-study investigator suggested that he place the guns in a gun cabinet, he then went out and purchased one. The youngest child, at age four, began constantly talking about guns and a Bowie knife, and threatened to blow his grandfather's head off. The boys also began cursing and lying. The father did not deny this behavior, but explained that children will hear curse words on the playground and proclaimed that his oldest son is doing tremendously better because he now tells the truth more often than he lies.

Further, there was a significant change in the appellant's circumstances. She testified she no longer had overnight guests of the opposite sex, no longer drank alcohol, and attended church with the children. The chancellor even complimented the appellant for her change to a positive lifestyle. The appellant did everything the court asked her to do, except pay child support. While I would not excuse the appellant's child-support obligation, it should be noted that the appellee was in arrears on his child support when the chancellor gave him custody.

On the other hand, the appellee admitted he had spent the night with a woman on several occasions when the children were present. He tried to justify his immoral behavior by asserting that he did this with only one woman and subsequently married her a mere twelve days before the custody hearing. The chancellor found that the appellee had rectified his immoral behavior by the subsequent marriage. The act of engaging in a premarital sexual relationship is immoral from its commission. A subsequent marriage does not transform immoral conduct into moral conduct.

It is obvious that the chancellor imposed a different standard of conduct on the parties. The record shows that the chancellor consistently entered orders forbidding the appellant from having overnight visitors of the opposite sex in the presence of the children. This same prohibition was never placed on the appellee. The court found a change of circumstances and changed custody to the appellee the first time evidence was presented that the appellant engaged in the prohibited behavior. But when the evidence showed that the appellee engaged in the same immoral behavior, the chancellor swiftly forgave the appellee because of his twelve-day marriage. Common sense dictates that if engaging in premarital sexual relations is immoral conduct by a female, then the same is true for a male, unless a double standard is being applied. Although there was ample proof of changed circumstances, the chancellor chose to ignore it and employed a double standard. This is certainly an abuse of discretion.

Furthermore, the chancellor abused his discretion in holding the best interests of the children were served by leaving custody with the appellee. The appellee's attitude toward the appellant

was shown to be so hostile that it was affecting the children's lives. Although he did not have anyone to care for the two school-aged children, he refused to allow the mother to keep the children after school. Instead, he took the children to work with him until he could place them in an aftercare program provided by the school. Thus, the children are required to remain at school after it dismisses for the day, instead of going home to the care of a parent. The appellee announced he would give the appellant only the visitation required by the court order and nothing more. He kept his answering machine on and the phone was not answered when the appellant called to speak to her children. Messages that she left on the machine went unanswered. Although the appellant is a pediatric nurse, the appellee kept the children from visiting her when they were sick contending he did not want them to get worse. He scheduled his wedding during the appellant's visitation time, and expected appellant to allow the children to attend, which she did. The appellee refused to share information about their children. He maintained appellant should get information from the school. He failed to tell her when their oldest child was injured because no bones were broken. The appellee's hostile attitude toward the appellant was so apparent, the chancellor admonished him to work on his attitude because it would be detrimental to the children.

Since the children were removed from their mother's care, they have changed schools, are required to stay after school every day, have had extracurricular activities taken away, have had access to guns, and are now cursing and lying. They have not been allowed to visit with their mother, a nurse, when they are sick nor answer her phone calls. They have lived with a father who has exhibited a very hostile attitude toward their mother.

The chancellor's finding that it is in the best interests of the children to remain with their father is incredible based on the evidence presented. It is my opinion the chancellor abused his discretion in making this finding.