Lee D. JABLONSKI *v.* Patricia A. JABLONSKI

CA 99-1089                                    25 S.W.3d 433

Court of Appeals of Arkansas
Division III
Opinion delivered September 6, 2000

*Kenneth G. Fuchs*, for appellant.

*Brazil, Adlong & Winningham, PLC*, by: *Caroline L. Winningham*, for appellee.

A NDREE LAYTON ROAF, Judge. Lee D. Jablonski appeals the portion of a Faulkner County Chancery Court divorce decree that divided real and personal property and awarded to his ex-wife, appellee Patricia A. Jablonski, her attorney fees. On appeal, Lee argues that the chancellor erred in finding some items to be marital property and in the apportionment of other items. He also challenges the award of attorney fees to Patricia. We affirm the property division as modified and reverse the award of attorney fees.

Patricia and Lee were married on July 9, 1966, when they were twenty-two and thirty-three, respectively. On January 17, 1997, Patricia petitioned for divorce, alleging general indignities. On July 16, 1998, the date of the final hearing, Patricia filed an amended petition, alleging that the parties had lived separate and apart since December 1, 1996. Ultimately the divorce was granted on the grounds alleged in the amended petition. At the time that Patricia filed for divorce, Lee had retired from the Union Pacific Railroad and was drawing a $1,900 per month pension. Patricia was employed as a nurse and had a monthly salary of approximately $4,000. Prior to his marriage, Lee inherited his father's home in Grand Island, Nebraska. In 1974, his mother died, leaving him more than $440,000. According to Lee, he lost approximately $80,000 in commodity trading and approximately $20,000 on

Union Pacific stock. However, he had more than $100,000 in a credit union account and a similar amount in Northwest Bank, in addition to "other monies" held by American Charter. Lee stated that he used some of the money to pay for the marital home, various cars, and his children's education, but that approximately $202,000 held in an ITT Hartford annuity and various mutual funds, was directly traceable to the inheritance. These accounts were solely in Lee's name as of the filing of Patricia's divorce petition. Although he admitted that at one time he placed Patricia's name on some accounts that contained the inheritance money, Lee claimed he did so when he was traveling with the railroad and worried that something might happen to him. Lee also testified that after he and Patricia had been married for approximately seven years, they kept their own checking accounts in which they kept the earnings from their employment separate. Furthermore, Lee stated that Patricia never touched "his money" until 1993, when she withdrew $1,750 from his checking account and put it into her checking account. At that point, he "got scared" and had her name taken off his accounts. Although that action nearly caused the Jablonskis to divorce in 1993, they reconciled.

Patricia confirmed that both she and Lee maintained separate accounts in which they deposited their earnings, and she stated that they would each be responsible for different family expenditures. She testified that she used "my money" to take care of "household matters, kids' clothes, foods, any of their activities and things, [and] doctors' bills," and that it was her decision to do so. She stated that while for the first seven years of their marriage she gave Lee her check and he gave her money for household expenses, she "finally decided that one of us needed to be happy and it was going to be me. So I kept my check, and that's when I continued then, you know, to — to buy things, and, uh, for the kids, and took care of day-to-day type expenses." Patricia stated that Lee paid for the house payment and utility bills. Nonetheless, she disputed the fact that Lee did not intermingle his inheritance. She claimed that it was deposited in a joint account at the Crossroads Bank in Omaha, Nebraska, and that her name was on his investments. However, she only recently became "aware" of his annuity and the other accounts. She recalled going to the bank to take her name off the accounts in 1993, but "found out later that actually he had changed my name — or take — either taken my name off the account, or in some way changed it so that I was no longer the survivor." She

stated that she no longer had "right of survivorship" on the accounts after that. Patricia also admitted that she did not know "the specific accounts" that Lee had over the years and essentially inferred that her name was on the accounts because Lee told her that he was investing for their retirement. She refused to say that she had not seen her name on the accounts, but she could not specifically recall doing so. Patricia also conceded that the accounts contained Lee's inheritance, but she thought that they also may have contained the proceeds from both their paychecks. Regarding her own inheritances, she stated that she always kept them separate from marital funds.

Lee also attempted to trace the money from his inheritance into the marital home, asserting that the $50,000 down payment came from property that he had inherited in Nebraska and that $17,000 worth of improvements including the addition of a family room, a new roof, and vinyl siding came from his own funds. However, the house was titled in both Lee's and Patricia's names, and Patricia testified that she contributed her paycheck for family expenses.

Regarding a 1968 Ford Mustang Convertible, a 1976 Cadillac Seville, a 1985 Corvette, and a 1986 Toyota truck, Lee claimed that he bought them all from his "savings." However, he was unable to state conclusively that all the money for the vehicles came solely from his inheritance, and essentially admitted at least a portion of the money came from money he had earned during the course of the marriage.

Also at issue was a boat and trailer that was titled in both Lee's and Patricia's names. Lee testified that $6,000 of the $7,200 purchase price came from a settlement he received in a hearing-loss case. However, he admitted that the remainder came from funds that could have been from his marital employment as well as his inheritance.

The last piece of disputed property that is the subject of this appeal is a 16-gauge shot gun. Lee claimed that the gun was forty years old and that he acquired it before the marriage. In her testimony, Patricia did not dispute that the shotgun was nonmarital property.

The chancellor found that Lee had "failed to trace nonmarital funds, namely his inheritance," into the disputed assets, and she

declared it all to be marital property. The chancellor, however, found that Patricia's inheritances had not been intermingled and were nonmarital property. She also found that the case "has gone on a year longer than necessary based on [Lee's] behavior," and awarded Patricia her attorney fees.

Lee first argues that the trial court erred in finding that all of the mutual fund accounts, the ITT Hartford account, the guns, the cars, the boat, and house were marital property. He concedes that he placed Patricia's name on the disputed accounts as a "beneficiary," but, citing *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996), he urges this court to find significant the fact that he took her name off those accounts in 1993, and she never requested to have it placed back on. He also notes that Patricia testified that she had no idea how much money was in the accounts and asserts that Lee had total control over the money. Regarding the automobiles that were acquired during the marriage, Lee concedes that the Cadillac and Corvette were purchased with intermingled funds, but claims that the Toyota pickup and 1968 Mustang were bought with money exclusively from his inheritance. As to ownership of the boat, Lee claims that $6,000 came from a settlement he got for job-related hearing impairment, and the balance came from his inheritance. Regarding the 16-gauge shotgun, Lee asserts that it was purchased prior to the marriage and should have been found to be nonmarital property. Finally, he argues that the chancellor erred in failing to order a $67,000 set-off for the money he "sank" into the house. We only find merit in Lee's argument concerning the 16-gauge shotgun.

With respect to the division of property in a divorce case, we review the chancellor's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence. *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999).

First, regarding the 16-gauge shotgun, Lee clearly testified that it was purchased prior to the marriage, and his testimony was not controverted by Patricia. Accordingly, we hold that the chancellor's finding that the shotgun was marital property is clearly against the preponderance of the evidence, and we modify the property division to award the shotgun to Lee as nonmarital property.

■ ■ We next consider the money that Lee inherited from his mother and subsequently deposited in various accounts. The testimony of both Lee and Patricia indicates that at least at one time, it was held in a joint account. Lee's testimony also indicated that he intermingled his marital earnings with his inheritance. Once property is placed in the names of both husband and wife without specifying the manner in which they take, such property is presumed to be held by them as tenants by the entirety. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). In order to rebut this presumption, the party claiming the property as separate property must present clear and convincing evidence that there was no intent to make a gift of the property to the spouse. *Mathis v. Mathis*, 52 Ark. App. 155, 916 S.W.2d 131 (1996). Clear and convincing evidence is evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the fact-finder to come to a clear conviction, without hesitation, of the truth of the facts related. *McLain v. McLain*, 36 Ark. App. 197, 820 S.W.2d 295 (1991). On review, the issue is whether the chancellor's finding that the appellee overcame the presumption that these items were held by the entirety by clear and convincing evidence is against a preponderance of the evidence. *Id.*

■ We hold that because the funds in question were placed in a joint account, Lee was obliged to present clear and convincing evidence to enable the chancellor to trace his inheritance. *Mathis v. Mathis, supra.* This, he simply failed to do. Conspicuous by its absence in this case was the will or other probate documents establishing how much money Lee actually inherited and a comprehensive set of bank records showing deposits and withdrawals as well as the names on the accounts. For the most part, the chancellor had only Lee's testimony, which not only was disputed by Patricia in several key respects, but also lacked the precision and clarity required to constitute clear and convincing evidence. Accordingly, we cannot conclude that the chancellor was clearly erroneous in finding that Lee failed to meet his burden in establishing his ownership of the money in the accounts that he controlled.

■ ■ Similarly, regarding the boat, while it may be true that Lee received a $6,000 settlement for his hearing impairment, he did title the boat as tenancy by the entirety property, and he admitted that he used some of his earnings from the marriage to make up the

rest of the purchase price. Under these circumstances, we cannot say that the chancellor erred in finding that Lee failed to overcome the presumption that he intended to make the boat a gift to his family. We also cannot conclude that the chancellor erred in finding that the Mustang and the Toyota are marital property. Lee testified that he bought the Mustang in "'70 sometime." His mother did not pass away until 1973, and, according to his own testimony, the inheritance that he received from his father was tied up in real estate at the time. Accordingly, the Mustang had to have come from marital funds. While the Toyota pick-up is a closer case, we note that in his testimony, Lee only specified that he purchased it from his "savings," which he acknowledged contained both marital and nonmarital funds. No evidence was provided as to when the truck was purchased, from which bank account the purchase money was drawn, and the source of the funds contained in the account. Again, we cannot conclude that the chancellor was clearly erroneous in finding that Lee had failed to prove that the Toyota was nonmarital property.

▮ Finally, regarding the marital home, not only was it titled as tenancy by the entirety, Lee testified that he regarded it as his duty as a husband and father to provide for his family. Totally absent was any formal or informal agreement to treat Lee's contribution as anything other than a gift to his family. *Cf. Dennis v. Dennis*, 70 Ark. App. 13, 13 S.W.3d 909 (2000). Accordingly, we cannot conclude that the chancellor erred in awarding Lee only half the proceeds of the sale of the marital home.

Lee next argues that the trial court erred in awarding fees because, pursuant to the plain language of Ark. Code Ann. § 9-12-309(a) (Repl. 1998) fees are only allowable "during the pendency" of the divorce, and thus, the statute was not followed. He also contends that the chancellor's finding that Lee was responsible for fees because the divorce case took "longer than necessary" was clearly erroneous, because the grounds on which the divorce was granted were that the parties lived separate and apart for eighteen months, and the eighteen-month period had not elapsed until the month of the final hearing. Finally, citing *Price v. Price*, 29 Ark. App. 212, 780 S.W.2d 342 (1989), he argues that the chancellor erred by failing to consider the relative financial position of the parties in that he was retired and living on a pension of less than $23,000 per year while Patricia was still employed and was earning

more than twice that much. We find the latter portion of Lee's argument persuasive.

■ A chancellor has considerable discretion to award attorney's fees in a divorce case. *Gavin v. Gavin*, 319 Ark. 270, 272, 890 S.W.2d 592 (1995). However, in determining whether to award attorney's fees, the chancellor must consider the relative financial abilities of the parties. *Anderson v. Anderson,* 60 Ark. App. 221, 963 S.W.2d 604 (1998); *Paulson v. Paulson,* 8 Ark. App. 306, 652 S.W.2d 46 (1983); *see also Lee v. Lee,* 12 Ark. App. 226, 674 S.W.2d 505 (1984).

■ This case involved a marriage of more than thirty years and complex property-division issues. The record also indicates that the chancellor herself had a crowded docket that complicated timely scheduling of ample hearing time to address all of the property-division issues. We also note that the grounds upon which the divorce was granted, eighteen months' separation of the parties, had not accrued until just days before the final hearing. Furthermore, the chancellor awarded each party an equal share of the marital property despite the fact that Lee was retired and was living on a pension that was less than half of Patricia's income. Accordingly, Patricia was clearly in a better financial position to bear the costs of this litigation than Lee. We therefore hold that the chancellor abused her discretion in awarding Patricia her attorney fees.

We are not unmindful that the chancellor blamed Lee for the relatively long time that it took to resolve this matter and found Lee in willful contempt of its orders. However, the chancellor made an express finding that the award of fees was not for the contempt and that Lee had been sufficiently punished by twice being incarcerated.

Affirmed as modified in part and reversed in part.

HART and MEADS, JJ., agree.