Judith Rebecca HASS *v.* Farrell DeWitt HASS, M.D.

CA 00-1432                                                44 S.W.3d 773

Court of Appeals of Arkansas
Division III
Opinion delivered May 30, 2001

*Law Office of Thomas B. Burke*, by: *Thomas J. Olmstead* and *Thomas B. Burke*, for appellant.

*Everett Law Firm*, by: *Elizabeth E. Storey*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this child-custody and parental-relocation case was granted custody of

the parties' child pursuant to their divorce decree. Approximately two years later, appellant graduated with honors from the University of Arkansas Law School and was offered a position as a law clerk for a federal judge in her home town, El Dorado. She notified appellee that she intended to accept the offer and relocate from Fayetteville to El Dorado with the child, who was then in preschool. Appellee, a physician, filed a petition to modify the divorce decree in which he sought a change in custody, asserting that the planned relocation constituted a material change in circumstances and that the 300-mile move was not in the child's best interest in that it would disrupt visitation and family relationships. After a hearing, the chancellor found that appellant had failed to meet her threshold burden of establishing some real advantage to the child in relocating to El Dorado, and prospectively ordered that custody would be changed to appellee in the event that appellant took the clerkship and relocated. Appellant contends that the chancellor, in so finding, misapplied our holding in *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994). We agree, and we reverse.

The chancellor's finding that the planned relocation would not be in the child's best interest was based on an erroneous reading of *Staab*. It is apparent from the chancellor's remarks from the bench that he believed that appellant was required to show that the move to El Dorado would offer some advantage unique to the minor child, as opposed to the custodial parent and child as a family unit. This is clearly contrary to our decision in *Staab*, where we wrote:

> While we agree with the chancellor that achieving the "best interests of the child" remains the ultimate objective in resolving all child custody and related matters, we believe that the standard must be more specific and instructive to address relocation disputes. In particular, we think it important to note that determining a child's best interests in the context of a relocation dispute requires consideration of issues that are not necessarily the same as in custody cases or more ordinary visitation cases.

> *After a divorce and an initial custody determination, the determination of a child's best interests cannot be made in a vacuum, but requires that the interests of the custodial parent also be taken into account.* In *D'Onofrio v. D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27, *aff'd* 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976), perhaps the leading case on custodial parent relocation and which we find persuasive, the court discussed this issue as follows:

The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. *The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interest of the children.* It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

*D'Onofrio*, 365 A.2d at 29-30. See also *Antonacci v. Antonacci*, 222 Ark. 881, 263 S.W.2d 484 (1954) (in approving the custodial parent's move from Arkansas to California, the supreme court specifically considered that she "prefer[ed]" to live in California and was "happy" there). The court in *D'Onofrio* was careful not to equate the best interest of the child with the best interest of the custodial parent. The court specifically recognized the importance of developing and maintaining a relationship with the non-custodial parent and the importance of visitation:

Where the residence of the new family unit and that of the non-custodial parent are geographically close, some variation of visitation on a weekly basis is traditionally viewed as being most consistent with maintaining the parental relationship, and where, as here, that has been the visitation pattern, a court should be loathe to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons. . . .[Nevertheless,] *the court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable lifestyle for the [custodial parent] and children be forfeited solely to maintain weekly visitation by the [non-custodial parent] where reasonable alternative visitation is available and where the advantages of the move are substantial.*

*D'Onofrio,* 365 A.2d at 30.

*D'Onofrio* also attempted to articulate a framework by which courts should be guided in deciding relocation disputes. It provides that, where the custodial parent seeks to move with the parties' children to a place so geographically distant as to render weekly visitation impossible or impractical, and where the noncustodial parent objects to the move, the custodial parent should have the burden of first demonstrating that some real advantage will result to the new family unit from the move. *D'Onofrio* further provides that, where the custodial parent meets this threshold burden, the

court should then consider a number of factors in order to accommodate the compelling interests of all the family members. These factors should include: (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent. *See also Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606 (1984).

We conclude that the criteria adopted in *D'Onofrio* are sound. We also conclude, from our review of the chancellor's ruling, that he made his determination of the child's best interests without appropriate consideration of the interests and well-being of the custodial parent. It would also appear that no consideration was given to the possibility of alternatives to the existing visitation schedule.

*Staab v. Hurst*, 44 Ark. App. at 133-35, 868 S.W.2d at 519-20 (emphasis added).

■ The advantages to the family unit in the present case are clear: as the chancellor recognized, the offer of a federal clerkship is a splendid opportunity for a lawyer entering practice. Furthermore, both mother and child would be enabled to go from a state of dependence upon appellee's payments of child support and alimony to a situation where the custodial parent is not only self-supporting, but is employed in a position that enhances her further career opportunity. No matter how successful or wealthy appellee may be, there is no guarantee that his financial situation will remain good, and it is obviously a real advantage for a child to have *both parents* be financially independent professionals capable of giving material support. *See generally Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). It is impossible, under the standard adopted in *Staab*, to say that the move to El Dorado does not offer some real advantage to the child.

■ Furthermore, the chancellor erred in finding there would be no reasonable alternative to the existing visitation schedule if

relocation were allowed. It is clear from the record that appellant was quite willing to facilitate the child's visitation with appellee, and was willing to employ a charter air service, if necessary, to do so. Although the latter option would not be practical for Wednesday evening visitation, *Staab* does not hold that the existing visitation schedule be maintained inviolate, but instead requires only that there be a reasonable *alternative* to the existing visitation arrangement. We reverse the chancellor's decree and note that appellant is free to relocate with the child to El Dorado for the purpose of accepting the federal clerkship. We remand for further consistent proceedings.

Reversed and remanded.

STROUD, C.J., and ROAF, J., agree.