Louanne PARKER *v.* John Matthew PARKER

CA 00-331                                                55 S.W.3d 773

Court of Appeals of Arkansas
Division III
Opinion delivered September 19, 2001
[Petition for rehearing denied October 24, 2001.]

*Kent J. Rubens* and *William Palma Rainey*, for appellant.

*Goodwin, Moore, Colbert, Broadway & Gray, LLP,* by: *Harry Truman Moore*; and *Barrett & Deacon, P.A.,* by: *D.P. Marshall Jr.,* for appellee.

Larry D. Vaught, Judge. In this Craighead County divorce case, appellant, who was granted custody of the parties' children, appeals the chancellor's decision prohibiting her from relocating to Little Rock. She also challenges the chancellor's finding that certain assets were appellee's nonmarital property and the chancellor's calculation of appellee's income for purposes of alimony and child support. We affirm the chancellor's ruling on the property division and support awards, but reverse and remand his ruling on relocation.

Appellant and appellee were married in 1983, and the marriage produced three children. The children were all born in Little Rock, and the family lived there from the mid-1980s until 1996, at which time they moved to Jonesboro. Shortly after the move, the parties' marriage began to deteriorate. Their relationship became very acrimonious and fraught with extreme discord, and the record is replete with evidence of almost daily conflict over numerous matters, large and small. Appellant filed for divorce in December 1997 and sought custody of the children. Appellee also sought custody, and he initially remained in the home following the filing of the divorce complaint. However, in February 1998, appellee left the premises

and rented a house nearby. In conjunction therewith, the parties entered into an agreed temporary order giving appellant custody of the children and containing the following provision:

> Neither parent shall remove the children from the County of Craighead for the purpose of changing the children's residence without the written consent of both parties for a period of five years from the entry of a final decree of divorce and agree that this provision is to be included in a final divorce decree. The parents recognize that this provision does not obligate the court, but the parents agree that this provision is a critical provision of this agreement and mutually request that the court comply with this parental agreement.

In October 1998, after an unsuccessful attempt to settle the case, appellant asked the chancellor to modify the temporary order to allow her to move from Craighead County. She cited as reasons for her request the constant conflict between her and appellee, the number of people in the community that would be involved in the divorce proceeding, and the higher earning potential and better educational opportunities in larger cities. Appellant also amended her complaint to add adultery as a ground for divorce, based upon her claim that, since the original filing date, appellee had engaged in sexual encounters with a number of women, including a twenty-one-year-old college student. She alleged that appellee's conduct had so humiliated her and the children that it would be in their best interest to move from Jonesboro.

During an eleven-day trial, the chancellor heard the testimony of over thirty witnesses and viewed over two hundred exhibits relating to the issues of custody, relocation, property settlement, and support. For the moment, we will concern ourselves only with the evidence that concerns the relocation issue. Appellant testified that, should she receive custody of the children, she would like to move with them to Little Rock for the following reasons: 1) Little Rock is closer to her parents and her sister, whom she visits three times per year; 2) she had a job offer at the Anthony School in Little Rock; 3) she wanted to further her education by pursuing a Ph.D. in School Psychology at the University of Central Arkansas; 4) her children were born in Little Rock, lived there for many years, and have friends there, as does she; 5) she has a strained relationship with her in-laws, who live near her in Jonesboro; and 6) she wanted to remove her family from the acrimony and embarrassment caused by the divorce, by appellee's obsessive behavior, and by appellee's relationship with a much younger woman. She said that, if she were

allowed to move the 133 miles to Little Rock, she would facilitate appellee's visitation by meeting him halfway between the two cities to deliver and pick up the children.

The children did not testify at trial. However, a psychologist, Dr. Phillip Hestand, spoke with all three of them, and his testimony revealed no strong feelings on their part one way or the other regarding a move from Jonesboro to Little Rock. Testimony from several witnesses indicated that all the children were doing well in school in Jonesboro, had made friends there, were involved in sports and activities, and visited frequently with their paternal grandparents.

Following the trial, the chancellor found that both parties were caring, loving, and attentive parents. However, he determined that appellant had been the children's primary caregiver and was more emotionally stable than appellee. He referred to evidence that appellee's obsessive disorder "tended to drive everyone around him crazy in trying to deal with him," and to evidence that psychiatric tests revealed that appellee was depressed, paranoid, suffering from anxiety, and could be using drugs or alcohol. Based on those findings, the chancellor awarded custody to appellant and gave appellee standard visitation. The chancellor then turned to the question of whether appellant should be restricted from relocating outside Craighead County. He first addressed the import of the agreed temporary order:

> [Appellant] now disavows the . . . provision of the Agreed Temporary Order stating that she never intended to agree to its terms and provisions. She was represented by very able and competent counsel who approved that agreement in her behalf and the testimony before the Court convinces the Court that she was aware of the provision. It may well be that, with the passage of time and all the unfortunate events that have occurred, she has now changed her mind and wants to move herself and the children from the scene of a failed marriage. Both parties recognize and agree that it is axiomatic that courts are not bound by any agreement the parties enter into regarding custody, support, or visitation although their agreement may tend to show their attitude regarding those matters.

Next, the chancellor reviewed this court's decision in *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), wherein we adopted a set of standards to be used in deciding parental relocation cases. In *Staab*, we established a framework that first provides that "where the custodial parent seeks to move with the

parties' children to a place so geographically distant as to render weekly visitation impossible or impractical, and where the noncustodial parent objects to the move, the custodial parent should have the burden of first demonstrating that some real advantage will result to the new family unit from the move." *Id.* at 134, 868 S.W.2d at 520. Once the custodial parent meets the threshold burden of showing that a real advantage will result from the move, the following factors must then be considered:

> 1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children;
>
> 2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent;
>
> 3) whether the custodial parent is likely to comply with substitute visitation orders;
>
> 4) the integrity of the noncustodial parent's motives in resisting the removal; and
>
> 5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent.

With the *Staab* factors in mind, the chancellor proceeded to examine appellant's reasons for wanting to move to Little Rock:

> While it is true that [appellant] will be somewhat closer to her relatives in Texas, the distance . . . will only be 133 miles further if she remains in Joneboro. She does have an abundance of friends in Little Rock but, on the other hand, she also has made a number of friends in Jonesboro and some of them rallied to her cause and supported her in her divorce action.
>
> [Appellant] testified that she will have a job starting in August at the Anthony School [in Little Rock] and wants to return to teach there and to place the children in school there. She also has prospects of a job in Jonesboro and, in fact, has a job at the present time earning $700.00 per month. She felt reasonably sure she could obtain better employment if she continued residing in Jonesboro

and the Court feels confident that, considering her education and background, she should be able to obtain better employment.

[Appellant] definitely wants to complete her educational requirements for a degree, but she was rather uncertain about the advantages of [the University of Central Arkansas] as opposed to [Arkansas State University in Jonesboro]. ASU is an excellent college of higher learning and the Court feels reasonably confident that she could obtain a similar degree at that institution.

Finally, the Court does sympathize with [appellant] in her desire . . . to remove herself from Jonesboro and the scene of a failed marriage, a stressful relationship with her in-laws, and the embarrassment of [appellee's] dalliance with a college girl. On the other hand, [appellant] won't be living with [appellee], nor will she be living with his parents and that stressful part of her life should be relieved. There was no evidence that his cavorting with the young female had ever been in her presence.

The chancellor then returned to consider the effect of the temporary order:

[T]he court feels that the prime and controlling consideration in enforcing or not enforcing that provision is what it considers to be in the best interests of these children. While they haven't testified, there has been evidence before the Court indicating their feelings, wishes, and desires and none of the three have expressed any strong desire to return to Little Rock. The three of them appear to be well-satisfied in their present environment in Jonesboro. They are all doing well in school, appear to be involved in a number of extracurricular activities and they do have the close support of family and friends in this area. The Court also feels, as does [appellee], that an agreement between parties has to have some meaning and substance or all agreements that parties may make will be inoperative when one of the parties changes his or her mind.

Based upon these findings, the chancellor ordered that the children not be removed from Craighead County for the purpose of changing their residence for a period of five years.

A chancellor's decision on relocation is reviewed *de novo*, but the chancellor's findings will not be reversed unless they are clearly erroneous. *See Wagner v. Wagner*, 74 Ark. App. 135, 45 S.W.3d 852 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake was committed. *Id.*

■ ■ *Staab v. Hurst* marked our first attempt at articulating a set of standards to be used by chancellors in parental relocation cases. In that case, a custodial parent sought permission to move from Fort Smith to Texas in order to attend nursing school. The chancellor denied permission based on his findings that the move would make visitation with the noncustodial parent impractical, would reduce the child's contact with her grandparents, and that the custodial parent could pursue other educational opportunities in the Fort Smith area. The chancellor seemed to emphasize the best interests of the child in making his determination. We reversed the chancellor's ruling and recognized that, while the best interests of the children remain the ultimate objective in resolving all child custody and related matters, the standard must be more specific and instructive to address parental relocation disputes. Determination of a child's best interests cannot be made in a vacuum, we said, but requires that the interests of the custodial parent be taken into account as well. We further acknowledged that, following a divorce, children belong to a different family unit than they did when their parents lived together. The new family unit consists of the children and the custodial parent, and what is advantageous to the unit's members as a whole, to each of its members individually, and to the way they relate to each other and function together is in the best interests of the children.

Since we decided *Staab*, we have approved parental relocations in four published cases applying the *Staab* factors. In *Wilson v. Wilson*, 67 Ark. App. 4, 991 S.W.2d 647 (1999), we affirmed the chancellor's decision to allow a relocation to California because the custodial parent felt she could find employment there. In *Friedrich v. Bevis*, 69 Ark. App. 56, 9 S.W.3d 556 (2000), we affirmed a chancellor's decision to allow a relocation to Texas because the custodial parent had obtained a better-paying job with less travel. In *Wagner v. Wagner*, 74 Ark. App. 135, 45 S.W.3d 852 (2001), we affirmed a chancellor's decision to allow relocation to Florida because the custodial parent had a job opportunity there and would be near her mother. Finally, in *Hass v. Hass*, 74 Ark. App. 49, 44 S.W.3d (2001), a case similar to the one now before us in that it involved an intrastate relocation, we reversed the chancellor's decision to prohibit the custodial parent from moving to El Dorado from Fayetteville. There, the parent wanted to move in order to take advantage of a job opportunity.

■ The proof offered by appellant in the case at bar is as compelling, if not more compelling, than the proof offered in the above-cited cases. The move would allow her to accept a job offer from the Anthony School and pursue an advanced degree at the University of Central Arkansas. While there were comparable opportunities in Jonesboro, the opportunities in Little Rock had distinct personal appeal to appellant. Her children had attended the Anthony School during their years in Little Rock, and appellant had spent a great deal of time there. Further, the particular degree appellant hoped to pursue at UCA was somewhat different from a comparable degree offered by ASU. Although the difference was slight, it mattered to appellant. Additionally, the importance to appellant and her family of moving away from a scene of conflict, embarrassment, and obsessive behavior should not be denied. The psychological and emotional aspects of relocation can be as advantageous as economic or educational aspects.

■ The chancellor in the case at bar implicitly recognized that appellant stated legitimate reasons for relocating to Little Rock. However, he discounted those reasons on the basis that appellant would be just as well served by staying in Jonesboro. We disagree with the chancellor's conclusion. We believe appellant met her threshold burden of demonstrating a real advantage to the family unit in moving from Jonesboro to Little Rock.

■ Once appellant met her threshold burden, it only remained for the chancellor to consider the remaining *Staab* factors. There was no finding by the chancellor that either party had improper motives in the dispute. Visitation was not likely to be hampered due to the short distance between Jonesboro and Little Rock and appellant's testimony that she would meet appellee halfway. Finally, the same factors with which appellant met her threshold burden demonstrate that the prospective move is likely to improve the general quality of life for appellant and the children. We also note a circumstance peculiar to this case that weighs in favor of the move: appellant and her children would not be relocating to a strange environment but to the city in which the children were born and in which they had lived all their lives prior to 1996.

■ Appellee argues that the outcome of this case should be governed by *Hickmon v. Hickmon*, 70 Ark. App 438, 19 S.W.3d 624 (2000), the only post-*Staab* decision in which we have upheld a chancellor's decision to deny permission to relocate. In *Hickmon*, the custodial parent sought permission to move to Arizona with her seven-year-old daughter. She had married a man who lived there

and had obtained employment there. Nevertheless, the chancellor refused to allow her to relocate. We affirmed primarily on the basis that the psychologists who testified were united in their opinions that the move would inflict a loss on the child and would alienate the child from her father and all the family, friends, and pets that she loved. By contrast, there is no testimony in this case that the move would have such a detrimental psychological effect on the children.

██ ██ Finally, we address the effect of the agreed temporary order on the matter of relocation. As the chancellor recognized, temporary custody agreements made in contemplation of divorce are not binding on the courts. *See Henkell v. Henkell,* 224 Ark. 366, 273 S.W.2d 402 (1954); *Servaes v. Bryant,* 220 Ark. 769, 250 S.W.2d 134 (1952); *Burnett v. Clark,* 208 Ark. 241, 185 S.W.2d 703 (1945). However, a temporary agreement is of some importance in showing the parties' attitudes. *Henkell v. Henkell, supra.* The chancellor in this case did not go so far as to actually enforce the temporary agreement, but he gave it considerably more weight than a mere indicator of the parties' former attitude on relocation. He declared that the agreement "must have some meaning and substance" or it would simply become "inoperable" when a party changed his or her mind. Once the question of relocation was presented to the chancellor for decision, it was his responsibility to make the determination of whether the relocation was proper under the standards set forth in *Staab.* The temporary agreement should have been viewed as nothing more than an indicator that, at some point, appellant and appellee shared the attitude that the children should not be moved from Craighead County for a period of five years after the divorce.

██ Based upon the foregoing, we reverse and remand the chancellor's denial of permission to relocate and hold that appellant is free to move to Little Rock.

We turn now to the question of property division. Appellee contended at trial that the following property was either a gift from his parents, an inheritance from his grandparents, or property acquired in exchange for property acquired by gift or inheritance: 1) a Charles Schwab IRA account created from an account appellee owned prior to marriage and funded with gift and inheritance money; 2) four hundred shares of Arkansas National Bancshares stock purchased with gift and inheritance money; 3) a one-third interest in Woodland Hills, Inc., given to him by his father; and 4) property owned jointly with his two brothers as joint venturers and

as partners in Jonesboro Investment Co., LLC. The chancellor agreed that the property was nonmarital pursuant to Ark. Code Ann. § 9-12-315(b) (Repl. 1998), which exempts property acquired by gift and inheritance, property acquired in exchange for property acquired by gift or inheritance, and the increase in value of such property, from the definition of marital property.

With respect to the division of property in a divorce case, we affirm the chancellor's findings of fact unless they are clearly erroneous. *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000).

According to appellant, the property at issue should have been declared marital property because she and appellee agreed that she would give up her career in exchange for the two of them sharing all assets, and because appellee represented on tax returns and loan applications that the property was jointly owned, and he paid tax liabilities on the property with joint funds.[1] She characterizes her argument as an estoppel argument. The elements of estoppel are: 1) the party to be estopped must know the facts; 2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; 3) the party asserting estoppel must be ignorant of the facts; and 4) the party asserting estoppel must rely on the other's conduct to his detriment. *Moore v. Moore*, 21 Ark. App. 165, 731 S.W.2d 215 (1987).

We have found nothing in the record, as abstracted, to indicate that appellant made an estoppel argument to the chancellor. Although she presented evidence of her claim that she should be entitled to one-half of the property at issue, she did not inform the chancellor that she was pursuing an argument based on the theory of estoppel. This is further evidenced by the fact that the chancellor did not mention the estoppel theory or make a ruling on it in his lengthy twenty-seven-page letter opinion, his subsequent letter opinions, or in the final decree. Thus, we are unable to consider appellant's argument because we do not address arguments made for the first time on appeal or theories upon which the chancellor has not ruled. *See Presley v. Presley*, 66 Ark. App. 316, 989 S.W.2d 938 (1999). In any event, appellant's proof of estoppel falls short on the third element because there is ample proof that she

---

[1] Appellant does not argue that she is entitled to a portion of any increase in the value of the property by virtue of her own contribution.

knew appellee received gifts from his family and owned property with his brothers and that he kept these assets separate from marital assets.

■ A second property-division issue is raised with regard to the Schwab IRA mentioned above. Appellee testified that he funded the IRA with gifts and inheritance money. Appellant argues that IRA contributions may only be made with earned income. Thus, she concludes, the IRA should be considered marital property. She cites no authority for that proposition. We do not address points on appeal that are not supported by convincing argument or authority. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

■ The final issue concerns the computation of appellee's income for purposes of alimony and child support. The chancellor awarded appellant $1,600 per month in alimony and ordered appellee to pay $2,026 in child support. He based those figures on an exhibit provided by appellee that projected appellee's 1998 income as $152,705. Appellant argues on appeal that $20,000 should have been added to that figure because, while the divorce was pending, appellee did not draw $20,000 out of the joint-venture account as he had in the past. Appellant has not fully developed this issue or satisfactorily explained the basis for her argument such that we can make a studied consideration of it. However, based upon the figures we have been provided, we are unable to say that appellee's 1998 income, upon which the awards were based, is artificially deflated such that reversal is warranted.

The chancellor's decree is affirmed as to the property division and support awards and reversed and remanded on the relocation issue.

Affirmed in part; reversed and remanded in part.

BIRD, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring. I concur in the majority's decision rendered today in this matter. I write separately to suggest that historically a custodial parent's change of residence within the state has not been a matter requiring prior approval from the chancery court, nor has such an intrastate move been subjected to a prior restraint.

While we did recently address an intrastate move in *Hass v. Hass*, 74 Ark. App. 49, 44 S.W.3d 773 (2001), and applied the criteria adopted in *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), as the majority does here, I wish to point out that *Staab* and the cases on which it relied involved interstate moves, and the consequential loss of jurisdiction that results from such moves. However, this distinction was not contended in *Hass*, nor by appellant in the instant case. Consequently, and appropriately, the majority does not address the point, and whether it does or should make a difference must await another day for decision.