Cite as 2025 Ark. App. 357

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-101

| | |
|---|---|
| CLYDE HATCHETT, SR.; AND VIOLENTEE HATCHETT<br><br>APPELLANTS<br><br>V.<br><br>HATCHETT BULLOCK CEMETERY ASSOCIATION, INC.<br><br>APPELLEE | Opinion Delivered June 4, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION<br>[NO. 60CV-23-6987]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Clyde and Violentee Hatchett (the Hatchetts) appeal the Pulaski County Circuit Court's decision granting permanent injunctive relief to the Hatchett Bullock Cemetery Association, Incorporated (the Association). We affirm.

## I. *Relevant Facts*

On September 18, 2023, the Association filed a petition for an emergency restraining order, injunction, and to set aside the Hatchetts' quitclaim deed regarding property on which the Hatchett-Bullock Family cemetery is located. The Association explained that in 1966, the Hatchett-Bullock Family (HBF) was awarded a permit to establish a cemetery on a parcel of land located in Maumelle, and since then, the HBF has maintained the land and operated the cemetery for the exclusive use by the HBF. In 2009, the Hatchett Bullock Cemetery

Association was incorporated after the last of the original permit holders died. The Association named April Harris as the director/president, Asia Owens as the secretary/director/principal, and Patricia Hughes as the vice president/director. The Association explained that the officers are authorized to act on behalf of the Association, and they had never conveyed the property to anyone. In 2021, the Association learned that the Hatchetts secretly signed a quitclaim deed purporting to transfer the property from themselves as grantors to themselves as grantees. In the deed, the Hatchetts falsely stated that Clyde was the president of the Association; however, the Association contended that the Hatchetts are not members of the Association authorized to act on its behalf and have no ownership interest in the property. Clyde also executed and filed a tax-compliance form in which he purported to be the "Grantor/President of 'Hatchett Bullock Cemetery[.]'" The Association asserted that the Hatchetts had sold gravesites to third parties not associated with the HBF. The Association requested a temporary restraining order against the Hatchetts enjoining them from selling gravesites, accessing the property, holding themselves out as owners, allowing nonfamily members to be buried in the cemetery, and taking any action that adversely affects the Association. The Association also requested a preliminary injunction addressing the same issues should the temporary restraining order expire. The Association requested a permanent injunction as well, alleging that the Hatchetts' actions irreparably harmed the members of the Association. The Association asked the court to set aside the Hatchetts' quitclaim deed because it was fraudulently executed and clouded the title.

On September 19, the court issued an emergency temporary restraining order and set a hearing for September 27. At the hearing, April Harris testified that she is the president of the Association, a nonprofit corporation whose purpose is to maintain a private cemetery for the descendants of the HBF. She explained that the cemetery is not meant to be a public cemetery, and the rules for operation adopted in 2009 provide that membership fees from those with burial rights pay for the cemetery's upkeep. Harris testified that Doc Hatchett had the deed to the property, and when he died in 2009, the deed passed to his heirs. His heirs formed the Association and were in the process of transferring the warranty deed to the corporation when the deed was destroyed in a house fire. Harris testified that there was no deed bearing the name "Hatchett-Bullock Cemetery Association, Inc."; however, the title company acknowledged that it was destroyed in a fire. She testified that the Hatchetts had never been members of the Association and had never paid dues. Harris stated that in 2021 and 2022, the Hatchetts vandalized the cemetery signs, blacking out the phone numbers of the Association's officers and cutting the lock on the gate. The police reports regarding the incidents and surveillance video of Clyde's activities at the cemetery gates were introduced into evidence. Harris recalled that in September 2021, Clyde called a meeting regarding the administration of the cemetery. She testified that the meeting did not involve the Association or any of its members and was not a legitimate meeting. Despite not having authority to complete any documents related to the Association, Clyde filed an annual report in 2023 listing himself as the president and his immediate family as other officeholders. Also in 2023,

3

the Hatchetts facilitated unauthorized nonfamily burials in the cemetery, and the buyers of the gravesites told her that they had paid Clyde for the gravesites.

Clyde Hatchett testified that he executed the quitclaim deed but that he was not knowledgeable about the law, and at the time, he thought he was doing the right thing. He acknowledged that he had no right to execute the quitclaim deed, and there was no consideration for the transaction. He testified that he had been elected president by the Hatchett family; however, there was no actual entity that he was the president of. He explained that he attached signs bearing his contact information to the cemetery gates so that people interested in a gravesite could contact him and the Hatchett officers. He acknowledged that the original signs listing the Association's officers' phone numbers were on the gates when he put up his signs and explained that he wanted to return to the way the cemetery was administered before, when gravesites cost $250 instead of $1200. He explained that he was taken off the board by his cousin Joe Hughes, and "[he] didn't want to accept it." Clyde denied that he had ever accepted money from anyone interested in a gravesite.

Violentee testified that she and Clyde were not aware of the incorporation of the cemetery until around 2014. Violentee explained that the Association did not get permission from the family to incorporate. Violentee produced minutes from the September 2021 meeting Clyde called showing that the Hatchett branch of the family established the cemetery's bylaws

Larry Hatchett, Clyde's brother, testified that Clyde was the president of the Hatchett-Bullock Cemetery because he, his cousins, and his children voted for Clyde. The purpose of

the September 2021 meeting at which Clyde was elected president was to return the administration of the cemetery to the way it was before 2009.

From the bench, the circuit court found that there was no testimony that "anybody's made off with a bundle of cash," and everyone testified that the cemetery is not for profit. The court determined that the Hatchetts knew that the Association has had dominion and control over the cemetery since 2009, and in 2021, the Hatchetts took steps to establish a competing organization "and then went so far as to file documents which, instead of competing, seem to list the Defendant Hatchett as the president of the selfsame entity that's suing him."

The circuit court entered the written order granting the Association a permanent injunction on October 18. The court found that the Hatchetts' quitclaim deed is void on its face for lack of consideration and because the Hatchetts did not have an interest in the land on which the cemetery is located that could be deeded. The court determined that irreparable harm would occur if the permanent injunction was not issued and enjoined the Hatchetts from holding themselves out as third parties or owners of the cemetery. The Hatchetts were further enjoined from marketing gravesites to nonfamily members and from burying nonfamily members in the cemetery. The Hatchetts were restrained from entering the Hatchett Bullock Cemetery without permission from the Association.

The Hatchetts timely filed their notice of appeal, and this appeal followed.

II. *Discussion*

5

For their first point on appeal, the Hatchetts contend that the Association does not own the cemetery, and there is no charter conveying ownership of the cemetery to the Association. This issue is not preserved for appeal.

The issue the circuit court addressed and ruled on is whether the Hatchetts should be enjoined from making decisions about the administration of the cemetery and entering the cemetery. Ownership of the cemetery property was never determined; thus, we are unable to consider the Hatchetts' argument because we do not address arguments or theories on which the circuit court has not ruled. *See Parker v. Parker*, 75 Ark. App. 90, 101, 55 S.W.3d 773, 781 (2001); *Presley v. Presley*, 66 Ark. App. 316, 989 S.W.2d 938 (1999).

For their second point on appeal, the Hatchetts argue that the Association had no legal rights regarding the cemetery, and thus, that they are not entitled to a permanent injunction. They contend that without an interest in the cemetery, the Association could not suffer harm from the Hatchetts' access to and administration of the cemetery. The Hatchetts explain that "merely incorporating an association does not automatically transfer any property interest it may have to the new entity," and it is not known who owns the property.

The Hatchetts' second point on appeal is not preserved because it is based on a challenge to the ownership of the property. As stated above, the circuit court did not determine ownership of the property, and we do not address issues the circuit court did not rule on. *See Parker*, *supra*.

For their third point on appeal, the Hatchetts assert that the court "seemed to think it was significant that the plaintiff corporation association claimed to have administered the property since 2009." To counter this perceived inference, the Hatchetts assert that Clyde possessed a key before 2009, and it was functional until 2021 when a new lock was installed. They contend that "adverse possession principles do not apply to the facts of this case."

Again, the issue the Hatchetts raise is not preserved for our review. The circuit court did not rule that the property was adversely possessed; thus, we are barred from reaching this issue on appeal. *See Id*. Accordingly, we affirm.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Wright, Lindsey & Jennings, LLP* by: *Troy A. Price* and *Antwan D. Phillips*, for appellants.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Campbell, Grooms & Spaulding, PLLC*, by: *Parker Spaulding*, for appellee.